IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOYCELYN M. JOHNSON ) | |
| ) | |
| v. ) | No. 3:08-0870 |
| ) | Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:    The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 19), to which defendant has responded with its own motion for judgment (Docket Entry No. 27).[1] Upon consideration of the papers supporting these motions and the transcript of the administrative record (Docket Entry No. 13),[2] and for the reasons given below, the undersigned recommends that plaintiff's motion be DENIED, that defendant's motion be

---

[1] For purposes of future filings, defendant is reminded that the undersigned's scheduling order in these cases (Docket Entry No. 14) directs the filing of *a brief in response* to plaintiff's motion, not the government's own cross-motion for judgment.

[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

GRANTED, and that the decision of the SSA be AFFIRMED.

### I. Procedural History

Plaintiff protectively filed her DIB and SSI applications on November 19, 2004, alleging disability as of February 12, 1999, as a result of "severe panic disorder, [high blood pressure], chronic depression, nerves." (Tr. 60-64, 83) The disability onset date was subsequently amended to May 1, 2002 (Tr. 22). Plaintiff's applications were denied upon initial and reconsideration review by the state agency, whereupon she requested that her case be heard *de novo* by an Administrative Law Judge ("ALJ"). The ALJ heard the case on January 18, 2007, when plaintiff appeared with her lawyers and gave testimony (Tr. 321-64). A witness for the plaintiff also testified, as did an impartial vocational expert. At the conclusion of the hearing, the ALJ took the case under advisement, until April 27, 2007, when he issued a written decision denying plaintiff's claims to disability benefits. (Tr. 22-31) The ALJ's decision contains the following enumerated findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2002.

2. The claimant has not engaged in substantial gainful activity since May 1, 2002, her amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension, obesity, anemia, and degenerative arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 10 pounds frequently and 10-20 pounds occasionally; stand and/or walk for 4 hours during an 8-hour workday (less than 1 hour uninterrupted); and sit for a total of 8 hours during an 8-hour workday. In addition, she should never kneel, crawl, squat, or climb ropes, ladders or scaffolds. She can occasionally climb stairs and ramps, and frequently stoop and crouch.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on November 14, 1961 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24, 27, 29, 30)

On July 9, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-9), thereby rendering that decision the final decision of the

3

Case 3:08-cv-00870   Document 34   Filed 09/10/09   Page 3 of 18 PageID #: 122

Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Plaintiff's arguments in this case all relate to the evidence of her mental impairments, in particular her depressive disorder. Accordingly, the following review focuses on that evidence.

Plaintiff was born on November 14, 1961, and was 45 years old at the time of the ALJ hearing and decision in this case. (Tr. 60, 328) She graduated from high school and attended Tennessee State University for one semester. (Tr. 292, 328) She was homeless at the time of her hearing, sleeping at the Union Rescue Mission in downtown Nashville and spending her days on the streets. (Tr. 294, 328)

Plaintiff first sought mental health treatment at the Mental Health Cooperative ("MHC") in 1999, presenting with "Depression/Mood Disorder." (Tr. 236) On the date of her first visit to MHC after the alleged onset of disability, October 25, 2002, she was seen by psychiatrist Tanmoy Chandra, M.D., for an "initial assessment." This date marks plaintiff's re-intake to MHC following a period of incarceration "due to violation of her probation related to drug charges." (Tr. 164) Dr. Chandra noted plaintiff's report of difficulty sleeping, irritability, and anger spells, though "her mood [was] okay considering she [was] not on her medications." Id. Dr. Chandra noted normal results of a mental status exam, and diagnosed plaintiff with major depressive disorder, severe recurrent with psychotic features; cocaine dependence, full sustained remission; alcohol dependence, full

4

sustained remission; and a rule out diagnosis of posttraumatic stress disorder. (Tr. 165) Dr. Chandra ordered that plaintiff be restarted on Paxil and Trazodone, medications which she had been provided while in prison. (Tr. 164-65)

Plaintiff's next documented visit to MHC was on June 4, 2004, though the report on that date indicates that she was last seen on October 29, 2003. (Tr. 161) At the June 4, 2004 visit, plaintiff was seen by Dr. David Chang, who reported that plaintiff had been off her medications for the last six months, and was more impatient, angry, argumentative, fearful, and anxious. Id. Plaintiff indicated that she knew these disturbances were caused by her failure to take her medications. Id. Plaintiff's primary diagnosis had been changed, as of February 2003, to "major depressive disorder, recurrent, moderate," and was confirmed by Dr. Chang in June 2004. Id. Refills were ordered of Paxil, Trazodone, and Vistaril. Id.

Dr. Chang next saw plaintiff on September 13, 2004, when he reported that she had been more irritable and angrier lately, but that she was learning to tolerate her frustrations and was engaging in healthy behaviors, including taking her medications regularly, with the exception of her Trazodone, which she took only 2 or 3 times per week. (Tr. 258) Plaintiff's next documented visit to Dr. Chang was on December 6, 2004, when she was noted to generally be feeling well, was trying to be productive and trying to find a job and a new place to live, though she also was noted to be struggling somewhat in "learning to live life without drugs." (Tr. 257) Her medications were refilled. Id.

Plaintiff next saw Dr. Chang on March 30, 2005, when she was reportedly attending trade school and appeared at MHC covered in dry wall dust. (Tr. 255) She reported that her mood had been "up and down," and that she had been feeling daily stress,

5

but Dr. Chang noted that she was "in bright spirits, easily talkative." Id. Her medications were refilled. Id. On April 29, 2005, plaintiff returned to Dr. Chang reporting that she was feeling well, taking her medications as prescribed and sleeping well with those medications, and denying any depressive periods. (Tr. 254)

On June 28, 2005, plaintiff appeared for a consultative examination by Dr. Patricia A. Jasnowitz, Ed.D., ordered by the state agency. Unfortunately, plaintiff was neither cooperative nor candid with Dr. Jasnowitz. After deeming the results of one psychological test invalid, Dr. Jasnowitz assessed mild functional limitations, making no diagnosis. (Tr. 214-17)

Plaintiff returned to MHC on July 22, 2005, when Dr. Chang noted that plaintiff was seen by a nurse practitioner student, to whom plaintiff reported feeling "so-so" while struggling to stay clean and abstain from street drugs. (Tr. 253) Dr. Chang refilled plaintiff's medications, and added a prescription for Naltrexone, a medication used to help curb the cravings for alcohol and street drugs.[3] Id.

On September 21, 2005, plaintiff was seen at MHC by Dr. Jerry Co, who noted her report of a stable mood with the help of her medications, as well as controlled cravings with the medication. (Tr. 251) Dr. Co noted her report of daily struggles with anxiety, and continued her medications. (Tr. 251-52) On January 11, 2006, plaintiff again presented to Dr. Co, who continued her medications after noting her report of continuous compliance with same. (Tr. 248) Plaintiff's mood was noted to be euthymic at this visit. Id.

Plaintiff's last documented visit to MHC was on May 2, 2006, when she

---

[3]See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a685041.html.

6

presented to Dr. Co having run out of medications approximately three weeks prior, and complaining of mood swings and concerned that she might be approaching menopause. (Tr. 246) However, Dr. Co noted that plaintiff's mood swings were "not a bother and not creating any problems for her overall functioning." Id. Plaintiff's Paxil and Trazodone were continued. Id.

During the documented period of plaintiff's care at MHC, assessments of her functional limitations were rendered at periodic intervals by persons other than her medical care providers. These assessments were given on Tennessee Clinically Related Group forms for adults (Tr. 166-91, 237-45), and include narrative details supporting the categorization of plaintiff's level of impairment in four broad categories of functioning (activities of daily living; interpersonal functioning; concentration, task performance and pace; and, adaptation to change), as well as the assignment of a score on the Global Assessment of Functioning Scale. The limitations assessed in these categories ranged from mild to moderate, except on the date preceding plaintiff's re-intake to services at MHC following her release from prison, when she was noted to be markedly limited with respect to interpersonal functioning and adaptation to change. (Tr. 178-79)

In September 2006 and then again in October 2006, the state agency, at the request of the ALJ, scheduled appointments for plaintiff's consultative psychological examination by Dr. Kathryn B. Sherrod, but plaintiff did not appear for either scheduled appointment. (Tr. 143-47)[4]

---

[4]An additional notice of an appointment for consultative examination in September 2006 appears to have been inadvertantly included in this record, as it pertains to a different claimant. (Tr. 148)

7

On November 28, 2006, plaintiff appeared for a forensic neuropsychological evaluation by Dr. Pamela Auble, Ph.D., arranged by her attorney. (Tr. 291-306) Dr. Auble rendered an exhaustive report, detailing plaintiff's history as reported by plaintiff, as well as plaintiff's history of treatment at MHC. She administered a battery of psychological tests, and found that plaintiff was of average intelligence, was fully oriented, had difficulty on complex sorting testing, and had difficulty dealing with people. Dr. Auble noted that plaintiff's depression appeared to be under good control with medication, and that the scales measuring depression and anxiety were within normal limits. Dr. Auble diagnosed "major depressive disorder, recurrent, in partial remission with medication"; "cognitive disorder NOS (secondary to substance abuse, characterized by mental inflexibility)"; "alcohol abuse"; "cocaine dependence, early full remission"; and, "borderline personality disorder (unstable relationships, impulsivity in self-damaging areas, anger, feelings of emptiness, affective instability)". (Tr. 300) She further concluded that plaintiff would have difficulty relating to co-workers, dealing with the public, interacting with supervisors, dealing with work stresses, functioning independently, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. (Tr. 301-06)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. <u>Elam ex rel. Golay v. Comm'r of Soc. Sec.</u>, 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence

8

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).  Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).  In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with lesser impairments proceed to step four.
> 4) A claimant who can perform work that he has done in the past will not be

9

found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff alleges that the ALJ erred, in reaching his step two finding of no severe mental impairment, by rejecting the evidence of her depression-related limitations provided by the professionals at MHC, and by consultant Dr. Auble,[5] in favor of the evidence from the consultative and nonexamining sources retained by the government. The rejected evidence from MHC, which plaintiff claims is subject to the protections of the treating physician rule, is contained in that institution's periodic Clinically Related Group ("CRG") assessment forms, including their notation of her assigned score on the Global Assessment of Functioning ("GAF") scale. Plaintiff argues that the opinions of the examining and nonexamining government sources cannot be considered to be substantial evidence in support of the ALJ's decision when compared to the proof from MHC and Dr. Auble. Respectfully, the undersigned must disagree, and therefore would recommend that the ALJ's decision be affirmed.

As referenced above, plaintiff takes issue with the ALJ's finding, at step two of the sequential evaluation process, that her medically determinable depressive disorder is not a severe impairment. The regulations define a severe impairment as one which significantly impacts the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a). Such basic work activities include, *inter alia*, understanding, carrying out, and remembering

---

[5] Defendant, in its brief, refers to Dr. Auble as plaintiff's "own doctor" and "her alleged treating physician," and argues that Dr. Auble is in fact ineligible for treating physician status. However, it is clear to the undersigned that plaintiff has never held out Dr. Auble as her treating psychologist, nor argued that such status should be accorded Dr. Auble based on the single neuropsychological evaluation conducted by Dr. Auble on November 28, 2006 (Tr. 291-306).

11

simple instructions; use of judgment; and, responding appropriately to supervision, co-workers, and usual work situations including changes in the routine work setting. 20 C.F.R. § 404.1521(b). A finding of nonseverity is appropriately made when the impairment in question is a slight abnormality which only minimally affects work ability. E.g., Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 n.2 (6th Cir. 2007).

However, as defendant points out, the ALJ's failure to find that plaintiff's depression is a severe impairment cannot be reversible error, inasmuch as plaintiff was otherwise found to have a combination of severe impairments which advanced the disability inquiry past step two. See, e.g., Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Rather, as plaintiff recognizes in her reply brief (Docket Entry No. 33 at 2), her argument for reversal of the agency's decision is appropriately framed as alleging the ALJ's error, at step five of the sequential evaluation process, in failing to assign any significant functional limitation related to plaintiff's depression. Cf. Anthony v. Astrue, 266 Fed.Appx. 451, 457, 459 (6th Cir. Feb. 22, 2008).

In this case, it is plaintiff's "major depressive disorder" which is alleged to pose work-related functional limitations, as reflected in the notes from MHC and the report of Dr. Auble.

1. MHC

Plaintiff's argument with respect to MHC (Docket Entry No. 20 at 7-11) appears to be that the treating psychiatrists' diagnosis of major depressive disorder was not given adequate weight, in light of the ALJ's decision to disregard the CRG assessment forms submitted by MHC. Those CRG forms contain the rater's assessment of plaintiff's GAF

12

scores, which scores are argued to "establish that Ms. Johnson is indeed impaired by her mental condition." Id. at 10.

To begin with, plaintiff appears at points in her brief to claim treating source status for MHC, the entity, rather than the psychiatrists who provided her treatment on behalf of MHC. Of course, the so-called "treating physician rule" is embodied in the regulations at 20 C.F.R. § 404.1527(d), entitled "How we weigh medical opinions," and "medical opinions" are defined in that regulation as "statements from physicians and psychologists or other acceptable medical sources" that reflect medical judgments. 20 C.F.R. § 404.1527(a)(2). As pertinent here, "acceptable medical sources" are defined to include only licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a). Accordingly, MHC itself is simply not capable of offering a medical opinion.

The record reveals that plaintiff was treated by three acceptable medical sources at MHC: Dr. Chang, Dr. Co, and Dr. Chandra. Dr. Chandra only examined plaintiff on the occasion of her intake at MHC, on October 25, 2002 (Tr. 164-65). Dr. Co examined plaintiff on three occasions: September 21, 2005 (Tr. 251-52), January 11, 2006 (Tr. 248), and May 2, 2006 (Tr. 246). Dr. Chang would appear to have had the greatest rapport with plaintiff, examining her on six occasions between June 2004 and July 2005 (Tr. 160-62, 253-55, 257-58). While all three psychiatrists diagnosed plaintiff with major depressive disorder, only Dr. Chandra's report could be viewed as supporting the notion that this disorder would significantly impact the ability to perform basic work-related activities. However, that report was given on the date of plaintiff's return to care at MHC following a period of incarceration, and even then it was noted that her symptoms included only difficulty

sleeping, irritability and anger spells, and that "her mood is okay considering she is not on her medications." (Tr. 25, 164) As detailed by the ALJ (Tr. 25), the notes of Drs. Co and Chang simply do not reflect anything more significant than plaintiff's report of occasional, minimal difficulties with mood swings when she fails to take her antidepressant medications as prescribed. The MHC notes document plaintiff's continuing need for services secondary to her struggles abstaining from drug and alcohol use, but the remission of these addictions and the minimal symptoms of her depression are also well documented in those notes, as discussed by the ALJ. Though plaintiff's treating physician(s) consistently diagnosed her with "Major Depressive Disorder, Recurrent, Moderate Primary," the ALJ did not dispute the diagnosis, but appropriately interpreted the MHC records reflecting minimal if any functional limitations as a result of that diagnosis. It is clear that "[t]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (citing Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988)). The medical opinions of the treating psychiatrist(s) were simply not rejected in this case.

     Nor did the ALJ err in his consideration of the CRG assessments, including the GAF scores reported therein. These assessments appear to have been rendered by "raters" whose professional qualifications are not known, including Kerrie Dorsey, Virginia Coleman, and an individual with the initials "K.C." (Tr. 168, 171, 174, 177, 180, 182, 185, 188, 191, 239, 242, 245) Clearly then, the ALJ did not err in failing to consider these assessments under the standards applicable to a treating source's opinion. Rather, the ALJ gave these assessments the consideration they were due as "other source" opinion evidence, see 20 C.F.R. § 404.1513(d); Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006),

assigning them little weight on account of the perceived disconnect between the level of functional impairment described in the forms' narrative fields, versus that described by the GAF scores assigned. (Tr. 26) The undersigned finds no error on this front. In fact, as it pertains to the GAF scores assigned by these raters, the ALJ is not required to put stock in such scores in the first place. Kornecky v. Comm'r of Soc. Sec., 167 Fed.Appx. 496, 511 (6th Cir. Feb. 9, 2006) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)). A GAF score is largely superficial, representing "a clinician's subjective rating of an individual's overall psychological functioning" in terms "understandable by a lay person"; it is not raw medical data. Kennedy v. Astrue, 247 Fed.Appx. 761, 766 (6th Cir. Sept. 7, 2007) (citing Kornecky, supra); see also, e.g., Smith v. Astrue, 565 F.Supp.2d 918, 925 (M.D. Tenn. 2008). Having demonstrated his consideration of the CRG forms and the assessments they contain, the ALJ has fulfilled his obligation to review all relevant evidence from MHC. Plaintiff's disagreement with his reasoning does not require reversal.

## 2. Dr. Auble

At the time of Dr. Auble's neuropsychological evaluation of plaintiff in November 2006, her depression was under good control, and was diagnosed as "in partial remission with medication" (Tr. 299, 300). However, Dr. Auble offered new diagnoses of cognitive disorder NOS, and borderline personality disorder, which were assessed as the cause of several severe restrictions on plaintiff's mental/emotional ability to perform work-related activities. (Tr. 300-06) After reciting Dr. Auble's findings, the ALJ rejected them "because they are not supported by the objective medical evidence or other substantial evidence of record." (Tr. 26) The ALJ explained:

15

> Specifically, the evidence [from MHC] (as outlined above) does not establish that the claimant experienced severe symptoms or issues. Further, the assessments are partly based on information provided by the claimant, which is <u>not</u> credible. For example, Dr. Auble's report noted that the claimant denied using cocaine for the past three years; however, it was also noted that the claimant began drinking alcohol and using cocaine again in July 2006. The claimant reported that she quit working as a nursing assistant in the late 1990s, because she could not endure the heavy lifting that was required. However, in March 2005, the claimant reported that she was "attending trade school" and working installing drywall. The claimant's statements are inconsistent.
>
> In addition, the claimant failed to attend scheduled State agency consultative psychological examinations (on two separate occasions) in September and October 2006; however, she managed to appear at the neuropsychological examination in November 2006, which was requested by her attorney. Further, when the claimant did attend a State agency psychological consultative examination in June 2005, she was uncooperative. Specifically, she reported not knowing basic facts about her life (e.g., not knowing if she had any siblings, how old she was when she completed school, etc.). She stated that there were 10 months in a year, and she could not name the months. She gave vague and unreliable information. For instance, she denied ever using alcohol or cocaine, and she reported that she had never been arrested. ... Further, it was noted that she mostly gave wrong answers on the mental status evaluation and on the WRAT-3; therefore, results were considered invalid. When the claimant presented for her neuropsychological evaluation, it appears that she cooperated fully, although as outlined above, her statements were not entirely credible. I conclude that the claimant's inconsistencies and actions reflect badly on her credibility.

(Tr. 26-27)

Plaintiff points out that Dr. Auble's findings were made with the recognition that plaintiff was particularly unreliable in the June 2005 interview with consultative examiner Dr. Jasnowitz (Tr. 217-17), and indeed "still was not always accurate about herself" in dealing with Dr. Auble. (Tr. 302) Nonetheless, plaintiff's manifest lack of candor in

16

clinical interviews and overall poor credibility -- alone or in combination with what the ALJ perceived as her manipulation of the disability determination system -- is reason enough for the ALJ to discount Dr. Auble's assessment of severe limitations *despite* plaintiff's unreliability, in favor of Dr. Jasnowitz's assessment of mild limitations *in light of* her unreliability. See, e.g., Mayes v. Astrue, 2009 WL 2477373 (E.D. Tenn. Aug. 11, 2009).

In sum, the undersigned finds substantial evidence to support the ALJ's decision to discount plaintiff's claim of significant limitations resulting from depression. It is therefore recommended that the administrative decision be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, that defendant's motion for judgment on the administrative record be GRANTED, and that the decision of the SSA be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 10th day of September, 2009.

                                             s/ John S. Bryant
                                             JOHN S. BRYANT
                                             UNITED STATES MAGISTRATE JUDGE